Our next case for argument is Stella Paterakos, if I'm pronouncing that correctly, v. City of Chicago. Please step up whenever you're ready. May it please the court, my name is Heidi Carsleeper and I represent the appellant in this matter, Stella Paterakos. This case is a fairly straightforward employment matter where the district court granted summary and violated the adages that courts are not supposed to take over the job of the jury by weighing conflicting evidence, resolving swearing contests, or determining credibility, or pondering which sides' facts are the truth. In this case, we allege that the district court violated this principle in two ways. One, the district court made credibility determinations and weighed the evidence. And two, the district court erred in her analysis in going through the prima facie case and finding a failure in the prima facie case, where the recent case law of this circuit is that the district court analysis is supposed to skip the prima facie case when you're for the adverse employment actions. In Vitchio v. U.S. Foods, 88 F. 4th, 687, the 7th Circuit held that when performance is raised as an issue, the district court does not need to consider the prima facie case of McDonnell Douglas. The reason for this is clear in this case. When you're looking at a situation where the people judging a plaintiff's performance are the same people that are being accused of discrimination, there are issues in determining whether the plaintiff's performance is meeting the legitimate expectations. Additionally, there are issues that arise in determining whether a comparator is truly a comparator when you have a plaintiff who is being targeted and disciplined disproportionately from those around her. The element of whether the plaintiff is meeting her legitimate expectations is not applicable in this type of situation where, like I said, where the people are judging the plaintiff's performance are also accused of discriminating against her. Ms. Lieber, in a discriminatory discipline case, at least as I understand the law, you still need comparators, right? Comparators are one way that a plaintiff can show that there's an inference of discrimination. If you're trying to make a circumstantial case based on discriminatory discipline, you've got to be able to show some other folks' disciplinary situations, right? That is one of the ways that you can show it. I don't think that you have to show it. There's also, if you look at Troup versus May, there's other ways that you can show an inference of discrimination other than just relying on similarly situated. Okay, but you don't have any explicit evidence of racial bias here, and the theory of discriminatory discipline here, I don't see how it works without comparisons in this case. Right. We can have a theoretical discussion about other cases, but this looks to me like you need good comparators. Correct, and the plaintiff did set forth good comparators. In this case, the plaintiff pointed to other employees who had the same job title as her, had the same supervisor as her, and were not in the same racial class as her, that were treated differently. Now, the court held that those— And who are those individuals? We're talking about Barbara Anderson and Gregory Turner. And is that referenced in the opening brief? Yes. Where?  So if we look at the— That's the reply. Yeah, sorry. Plaintiff set forth the comparators in the summary of the argument, the statement of facts area, and also in her argument at page— 9 in the opening brief. On page 9?  In the statement of facts? Yes. We set forth the factual circumstances that she was treated differently than her nonwhite coworkers. And on page 9, she identifies Anderson and Turner as two African Americans who reported to Crystal Warren. Yes. And the question where I was going is where has she identified those two individuals as comparators to the conduct that she engaged in? She did identify those as two African Americans that also reported to Crystal Warren. Right. And that is the whole basis of her argument is that she was treated differently than those coworkers set forth. I addressed this in the reply. There's a substantial amount of conversation in the response that these arguments are now waived because you bring them up for the first time in the reply. So that's why I just wanted to spend a moment. But go ahead.  And I did mention in the reply where we brought it up. Regarding the comparators, the district court found that the comparators were not similarly situated because they had not suffered the same discipline that the plaintiff did. And that's where this issue of going through the prima facie case when you're looking at a disparate discipline issue falters regarding looking at the comparators. Ms. Paterakis' disciplinary... walk back from the McDonnell test, and that's the way the evidence was presented before the district court. Right. The defendants, when they filed summary judgment, went through the McDonnell-Douglas steps. Plaintiff responded to those steps. Now, the court's analysis, though, I believe is improper under Coleman looking at the comparators and requiring the comparators to have the exact same discipline as the plaintiff when the plaintiff is complaining that that discipline is being meted out disproportionately. That's exactly why this argument fails is because you're never going to have a comparator that has the exact same discipline when that's the point. They're not being disciplined as... I don't think that was the district court's thinking. I thought her thinking was you hadn't shown evidence that black employees had engaged in misconduct, broadly speaking, on a scale comparable to what Paterakis had done. Right. And that's the point. Warren and Pulfis both stated that they were monitoring Paterakis, nobody else. So they're not going to have the scale of discipline that Paterakis did when she's the only one that's being singled out. She's the only one that's being monitored for those disciplines. We set forth in our brief and in the summary judgment all of the areas where Anderson and at the same level as the plaintiff when it came to issues as putting their phones on hold or going on breaks. And I think our argument is that under Coleman, the district court put too much of a rigid standard in these comparators. In Coleman, the court sets forth you have to look for comparators, not clones. You're not going to have somebody that is exactly one for one as a comparator when you're talking about disparate discipline. I also want to touch on the credibility issue. Aside from the phone issue in regards to that first suspension, she was also suspended for policy and the misusing of office equipment. So I want to make sure Anderson and Turner, neither one of those individuals were disciplined for those violations. Is that correct? That's correct. There was testimony from Ms. Paterakis and also from the union that there is no policy regarding using office equipment and that people did it all the time and nobody had ever been disciplined for it. So while specifically addressing Anderson and Turner's use of it, we can still show that Plaintiff was the only one who was ever disciplined for this, even though there's testimony from the union representative and Ms. Paterakis that this happened all the time and that there was no policy that existed that she couldn't use it. In regards to the second suspension in the webinar, was there any comparator that also did not attend? There was one other employee who did not attend. The situation is slightly different. I think on that point, the main point on how that was pretextual that the Plaintiff points out is that... I want to go back to a comparator. Do we have a comparator for the second suspension? I didn't see anything in the evidence to demonstrate whether or not Madison attended or did not attend. Madison did not attend, as well as there was one other employee who... I'm blanking on his name at the moment. I apologize. An African-American employee, Kreshan Burt, I believe, who said, I'm not using my own equipment to participate in work. He ended up taking vacation days that whole time. He would not have attended that as well. I didn't see any citation to the record, though. I know you're representing to us that Madison did not attend. I didn't see anything in the record that supported that. Did I miss it? It should be in the statement of facts that Holfess allowed her to not attend because she was out of town or something that day. Madison was actually ordered to attend. I think you might be confusing the comparators. Okay. Okay. And so in the statement of facts, I did not see a reference answering that even though she was ordered to attend by Warren, whether or not she attended. I'm just trying to identify a comparator. Sure. I don't believe that she attended. I don't recall... Okay. That's fine. Exactly. And as to the third suspension? The third suspension deals with... The intermittent FMLA.  Is there a comparator there? So there's nobody else in the department that specifically was on FMLA to compare with that. The issue with that third suspension, again, looking at the pretext of it and whether there was no policy that said that people couldn't talk to the police officers in the lobby. That all of the other employees were allowed to do that. Other employees were allowed to be in the office on their breaks without question, whereas Ms. Pratt-Arakos was not. Defendants make a lot about Beverly Anderson not leaving the room during her lunch breaks or during her 15-minute breaks. But that was an area where Ms. Pratt-Arakos was actually criticized and told she could not stay in the office. So she's being treated differently in where she can be, who she can talk to, and they're disciplining her for policies that don't exist, and they know they don't exist. There's an email from Monica Rafik to Crystal Warren saying, you know, don't email her. We don't know whether we can actually require her to not be here. So they know that there's no policy that says she can't do that, and yet they're still disciplining her. My time is up, but if you have any more questions, I can go through it. Thank you. Thank you. Ms. Masters. May it please the Court. Ruth Masters on behalf of the city. Ms. Pratt-Arakos is an employee who repeatedly failed to follow the rules and now alleges that her resulting discipline violates Title VII's prohibition against racial discrimination and the FMLA's prohibition against retaliation and interference. This morning I'm going to discuss the lack of evidence showing a genuine issue of material fact on the merits of any of allegations, but I am going to begin with waiver. And the place I want to start is in this case, the plaintiff briefed and argued the prima facie case. She did not say to the district court, you don't have to consider the prima facie case. Don't rule on the prima facie case. She briefed and argued it. You'll find it in the response to summary judgment, which is docket number 126. And she lost. And she lost on the prima facie case on someone who is similarly situated. The Moran case, Moran versus Advocate Christ General Christ Hospital, is directly on point to that. You can't come up on appeal and argue that there is error when the district court applies the test that you told them to apply. And that's what's happening here. That in and of itself is a basis for affirming because she's not, and then the other questions I think Judge Pryor, you asked, is that there's an argument on this in her argument section about anyone who is similarly situated. So she loses on that and then comes up on appeal, doesn't argue it. And is referring to various places maybe in her statement of facts, but that doesn't even clearly identify Gregory Turner and Beverly Anderson, who she is now referring to. The argument, I think, at one, I mean, it's just not in there. And I commend that to you. On the second suspension, what about Mary Ann Madison? So, and I, with respect to counsel, I believe that there was some confusion about who didn't attend. Mary Ann Anderson was ordered to attend. There's no evidence she didn't attend, and she is a comparator. The plaintiff doesn't consider her a comparator, but she is a comparator. She's the only other person in the same situation who was at work that day, who was told to attend. She's black, and there's no evidence in Belize that she didn't attend. And so there's no evidence of discrimination on that. On the other, the first suspension, there's no evidence on any of those, that anybody else behaved the same as Ms. Paterakos. And she, there's no evidence, there's no comparator on lunch. She's told, and first of all, that is the rule. It's, there's no dispute that that is the rule, that everybody is supposed to go to lunch at their assigned lunchtime. And she's the only one who doesn't. There's no one who doesn't, any record of anybody else who does not do that. And not only does she not attend, go to lunch on her assigned time, the first day that Ms. Warren is in room 20, in the room, which is March 20th, she sees Ms. Paterakos in the hall at 2 o'clock, and they have a conversation. You need to take your lunch at your lunch hour. On March 25th, they have a conversation with her. You have to take lunch at your lunch hour. On March 26th, the next day, Ms. Paterakos goes to lunch, not at 1 o'clock when her lunchtime is, but at 1.20. So she goes 20 minutes late the next day. On April 1st, there's another conversation with her. Go to lunch on your lunchtime, which had switched to being noon by that point. On April 3rd, she leaves the building at 1.23. So she leaves the building an hour 23 minutes after her lunch, and she comes back at 2.35. So more than an hour she's taking for lunch. There's absolutely no comparator on that. There's no comparator on putting your phone in not ready status, that she is doing it more than anybody else. Everybody else is told to do it. There's no comparators on that. Regarding the fax machine, the specific complaint against her is not only is she using the fax machine, she's using it to accept samples of eight pharmaceutical samples delivered. And so they think she's running a business. So it's not just the use of the fax machine. It's running a business. No comparator on that as well. Regarding FMLA leave, she is on leave. She is seen socializing. There's no dispute that she's socializing. She returns late from FMLA leave. She's charged with violating or abusing her FMLA leave for four different days. On those four different days, she is in front of City Hall during her leave, and yet she returns late, 15 to 24 minutes each of those days. And, again, they can see her out there socializing. There's no basis to think that the discipline of her is based on discriminatory animus, as opposed to the fact that she is violating the rules in front of everybody. Ms. Masters, there apparently are some discrepancies between phone records and the specific accusations regarding abuse of FMLA leave. Could you address those? I will, because at most that's not showing she isn't on the phone. The actual phone records, which are in discovery, show that she is on the phone. And if you turn to the disciplinary charge themselves, the pre-disciplinary notice and then the actual disciplinary notice, because there's two phases, most of the entries on the phone, it will say on the phone and or socializing. So they're not locked into specific phone times. And she is on the phone. And that and the socializing, frankly the socializing alone, is enough to have given her supervisors an honest suspicion, and that's all they need is a reasonably held honest suspicion that she is abusing FMLA time. And there's no reason, there's undisputed facts that support that finding. And for that reason as well, her FMLA claims fail, because both interference and retaliation fail if there's an honestly held suspicion that someone is violating FMLA. If the court has no questions, we would stand on the brief and ask that the judgment of the district court be affirmed. Thank you. Thank you. Ms. Sleeper, you had used all your time, but I'll give you an extra minute in rebuttal if you have something else to say. Thank you. I just want to address a couple of points really quickly. One regarding argument on summary judgment and waiver. A plaintiff argued on page 13 of her summary judgment response that the element of meeting an employer's legitimate expectations was not applicable in the situation where a plaintiff's performance was being judged by the people she was accusing were discriminating against her. So the same argument was made at the district court level, as is being made here today. Additionally, regarding the lunchtime comparators, Beverly Anderson did testify that she had no issues with if she took 15 minutes over her lunchtime on a call, that she could go to lunch later. That was the same behavior that plaintiff was engaged in. So she is a comparator on that issue. The issue of plaintiff running a second business as part of the discipline over the fax machine, that goes to show that there was no factual basis for the disciplines that plaintiff was receiving. That was one of the things that we pointed out, was that there was no second business. She ordered some vitamins for her parents because that's who she was taking care of for her FMLA leave. So the accusation that she was running some second business, there was no factual basis for that. Regarding plaintiff returning late, we don't dispute that she was not a perfect employee. Perez v. Thornton's Incorporated, all employees, not perfect employees, are protected by Title VII. So we've never argued that coming back late from lunch or clocking in late could not be appropriate discipline. But doesn't that collapse your entire argument, reliance on Viaco? Viaco v. U.S. Foods. Your whole argument is that once the employer raises performance as the issue, we can skip and move directly to, we don't need comparators, we can move directly to pretext. But in that case in particular, the Viaco had presented sufficient evidence to rebut U.S. Foods' assertion that plaintiff's performance was poor. If you accept that your client's performance was poor, if you accept that she was violating these policies, no, that's not what you accept. No, no. I'm saying on the very discreet issue of did she come back late from FMLA a time or two, did she log in late, I'm saying that while the vast majority of the discipline that has led to these suspensions she has directly refuted as not factual. I am not disputing that she may have come in late or clocked in late, but I think on that discreet issue is different than just saying she's a poor performer and all of this discipline is warranted. That's not what I'm arguing. All right. You'll have to wrap up your time. Yeah. And then I just wanted to say on the honest suspicion, regarding the FMLA, Warren testified specifically that she didn't know whether a plaintiff was violating FMLA and that was above her pay grade. So I believe that there was no honest suspicion. She just was going to discipline her no matter what. And, again, that was part of the credibility determinations that the district court erred in making, was looking at the pretext and making it a subjective standard as to whether Warren believed her discipline was appropriate or not. Thank you. Thank you. Our thanks to all counsel. We'll take the case under advisement.